FIDELITY & CASUALTY CO. OF NEW YORK v. ST. MATTHEWS SAV. BANK.

(Circuit Court of Appeals, Fourth Circuit. November 14, 1900.)

No. 332.

REFERENCE—CONSENT ORDER—REVIEW OF REFEREE'S FINDINGS.

Where a case involving the examination of long and complicated accounts, and the taking of the testimony of many witnesses, is by consent of the parties referred to a special master to hear and determine all issues of law and fact involved, his findings and conclusions have every presumption in their favor, and are not to be set aside unless there clearly appears to have been error or mistake, or for fraud or misconduct on his part.

In Error to the Circuit Court of the United States for the District of South Carolina.

T. Moultrie Mordecai, for plaintiff in error.
S. Dibble and Charles G. Dantzler, for defendant in error.

Before PAUL, BRAWLEY, and WADDILL, District Judges.

PAUL, District Judge. This case is here on a writ of error from the circuit court for the district of South Carolina. It was brought in the circuit court of common pleas for the county of Charleston, S. C., by the defendant in error, and on the petition of the plaintiff in error, a nonresident, it was removed into the circuit court for the district of South Carolina. The object of the suit was to recover of the plaintiff in error, the Fidelity & Casualty Company of New York, the sum of $10,000, and interest thereon. The action is based on the bond of the plaintiff in error, guarantying the honesty and integrity of J. W. Zimmerman as cashier of the said the St. Matthews Savings Bank. The bond was executed July 8, 1889, and was renewed annually from that date; the last renewal being on the 8th day of July, 1894, extending the bond from that date to July 8, 1895. It was under this extension that the defalcation of the said Zimmerman occurred. After the removal of the case, the defendant below filed its answer to the complaint. The answer denies the material allegations of the complaint, and sets up affirmative defenses to the effect that the renewals of the bond were made upon false representations of the president of the bank, and that the officers of the bank were guilty of such negligence in the management and supervision of the bank and of its cashier, Zimmerman, as to relieve the defendant from any liability for the default of said cashier. A succinct statement of these defenses, as made by the master, is as follows:

"That the several renewals of said guaranty bond were made upon the warranty and representation of the plaintiff, through its president, that the accounts of said cashier had been examined and found correct, that he had performed his duties in an acceptable manner, and that the officers of the plaintiff bank knew of no reason why the guaranty should not be continued, and that, but for the said warranty and representations, said renewals would not have been made, and that the warranty and representations so made were false, and that by reason thereof the defendant was released from any liability to the plaintiff, if any ever existed; it being provided by the bond that

'any willful misstatement or suppression of fact by the employer, in any state-ment or declaration to the company concerning the employed, or in any claim made under this bond, or a renewal thereof, renders this bond void from the beginning.' And, further, that the plaintiff and its officers and agents were guilty of negligence and the want of due care and business caution in the management and supervision of its said bank and of the said cashier, and that if the plaintiff had caused a proper examination to be made quarterly, or at any other time, the defalcations and discrepancies of the cashier would have been easily and readily revealed, and that, if any defalcation or dishon-esty occurred on the part of the said cashier during any period for which the defendant is claimed to be liable, the same occurred through the negligence and mismanagement of the plaintiff and its officers, and the defendant is not liable therefor."

The case involving the examination of long and intricate accounts, the court entered a consent order, under the practice of South Car-olina, referring the same to a special master to hear and decide all issues of law and fact involved. The master took the testimony of many witnesses, and in his report, which shows a thorough and an intelligent investigation of the facts, and presents a clear statement of the law bearing upon the defenses presented by the defendant, he recommended that judgment be entered for the plaintiff for $7,-047.85, with interest at the rate of 7 per cent. per annum from the 12th of September, 1895; this being the amount due on account of defalcation under the renewal bond of July 8, 1894. The principal sum so reported as due on account of the fraud and dishonesty of the cashier is made up of his defalcations in connection with the cur-rent deposits in the bank and deposits in the savings bank depart-ment, his own personal account, the collection account, limited to other than those of its corresponding banks, and the daily balance account. The master further found that there had been no willful misstatement or suppression of fact made by the bank, concerning the said Zimmerman, to obtain the renewal of the guaranty bond of July 8, 1894. He held that there was not such negligence and want of due care on the part of the bank and its officers in the manage-ment and supervision of the bank and its cashier as to occasion the loss complained of by the plaintiff. Exceptions were filed to the master's report by both the plaintiff and the defendant. The plain-tiff excepted on the ground that the master had disallowed the items and amounts claimed as defalcations of the cashier, Zimmerman, on account of collections made by him from corresponding banks. The defendant's exceptions were, in substance, that the master erred in finding, as a conclusion of fact, that the date of the discovery of the defalcation of Zimmerman was March 29, 1895, instead of April 1, 1895; that the master erred in holding that the discovery mentioned in the bond did not relate to the full and complete discovery of the entire defalcation, but to the first discovery of any single act of de-falcation; that the master erred in finding that the bank, in com-pliance with a proviso of the bond, had immediately given notice to the defendant on the discovery of the fraud and dishonesty of the cashier; that he erred in holding, as a conclusion of law, that neither of the affirmative defenses set up in the answer could prevail; that he erred in holding that the proof was not sufficient to show that the plaintiff bank, in any statement made by it concerning Zimmerman,

the cashier, had made any misstatement of fact or suppressed any known fact; that the proof was not sufficient to show negligence and want of due care on the part of the plaintiff and its officers in the supervision of its bank and cashier as would relieve the defendant from liability on its guaranty bond; that the master erred in holding that he was not prepared to extend to a surety in a cause like this the same leniency which the law extends to a surety on a personal bond, because the latter assumes the risk through feelings of friendship and kindness, and the former as a matter of business, for a pecuniary consideration, and for the purpose of profit; that he erred in holding that no condition of the bond required the plaintiff to examine the books of account, including cash securities and vouchers, at any time; that he should have held that the representations contained in the certificate of the president of the bank were by the terms of renewal made a condition of the bond on which the action was brought; that he erred in holding that the defendant, under the condition of the bond, must reimburse the plaintiff bank for the fraudulent acts and defaults of its cashier by reason of which the bank has suffered pecuniary loss; that he erred in finding, under the head of "Current Deposits," the liability of the defendant to be $4,531.48, under the head of "Individual Accounts" $888.11, under the head of "Savings Deposits" $1,095.28, and under the head of "Collections" $532; and that he should have found, if there was any liability on the defendant, it did not exceed $1,945.75. The exceptions were all overruled by the circuit court, the report was confirmed, and judgment entered for the amount reported as due the plaintiff. A motion for a new trial was made and overruled. Exceptions were taken to the finding of the court below in its failure to sustain the exceptions filed by the defendant to the master's report.

We do not deem it necessary to discuss any of the questions raised by the assignment of errors, as they do not, in our view of the case, present any matters of law for the decision of this court. The learned judge of the circuit court, in his opinion filed in the record on the motion for a new trial, accurately states the law applicable to an account of this character. He says:

"It would seem, in a case of this kind, involving as it does a long and intricate account, and the testimony of many witnesses, that the findings of fact by the special master should have an effect analogous to that of a special verdict found by the jury. If this be so, the court could not disturb them, except for gross error on the part of the referee, or for fraud or misconduct on his part."

In Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363, the supreme court thus states the rule:

"In cases of this kind referred to a master to state an account, depending as they do upon an examination of books, upon the oral testimony of witnesses, and perhaps, as in this case, upon the opinions of an expert, his conclusions have every reasonable presumption in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake on his part."

This rule had previously been laid down in Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664, and approved in Callag-

han v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, and in Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764. In the last case the order of reference was as follows:

"By consent and request of all the parties herein, it is ordered by the court that Hon. Richard D. Harrison be, and he is hereby, appointed a special master herein to take and decide all the issues between the parties and make his report to this court, separately stating his findings of law and fact, together with all the evidence introduced before him, which evidence shall thereby become part of his report, which report shall be subject to like exceptions as other reports of masters."

To the report of the master, exceptions were filed, and, being sustained by the circuit court, the cause was appealed to the supreme court. Justice Field, delivering the opinion of the court, says:

"It [the court] cannot of its own motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers. But when the parties consent to the reference of a case to a master or other officer to hear and decide all the issues therein, and report his findings both of fact and of law, and such reference is entered as a rule of the court, the master is clothed with very different powers from those which he exercises upon ordinary references, without such consent; and his determinations are not subject to be set aside and disregarded at the mere discretion of the court. A reference by consent of parties of an entire case for the determination of all its issues, though not strictly a submission of the controversy to arbitration,—a proceeding which is governed by special rules,—is a submission of the controversy to a tribunal of the parties' own selection, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law. Its findings, like those of an independent tribunal, are to be taken as presumptively correct,—subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise."

The order of reference entered by Judge Simonton in this case is a consent order, and is so treated by him in his opinion. It is as follows:

"It appearing to the satisfaction of the court, upon an examination of the pleadings herein, that the trial of this cause will require the examination of a long account, after hearing counsel for plaintiff and defendant, and on motion of Messrs. Mordecai & Gadsden, defendant's attorneys, it is ordered that this cause be, and the same is hereby, referred to James Izlar, Esq., as special master, to hear and decide all issues of law and fact involved herein, with leave to report any special matter; and then the said special master shall have the power and authority to demand of the parties that such books, papers, and documents be produced before him as may be necessary to elucidate the same."

The report made in pursuance of this order of reference just quoted is covered by the doctrine stated in Kimberly v. Arms, supra. The order referring the case to a special master directed him to hear and decide all matters of law and fact involved in the case. His findings are clearly within the scope of the order. The court below gave them the weight to which they are entitled under the principles well settled by the decisions to which we have referred. The circuit court was correct in holding that the findings of the master could not be disturbed except for gross error or fraud or misconduct on his part. No evidence of such error or misconduct appearing in the record, the judgment of the circuit court is affirmed.