## CARTER OIL CO. v. UTILITIES PRODUCTION CORPORATION.
### No. 1704.

Circuit Court of Appeals, Tenth Circuit.
Jan. 9, 1939.

Jas. A. Veasey, of Tulsa, Okl. (L. G. Owen, of Tulsa, Okl., on the brief), for appellant.

E. J. Lundy, of Tulsa, Okl. (J. R. Harmon and Matthews, Harmon, Karr & Springer, all of Chicago, Ill., and Poe, Lundy & Morgan, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

This action involved conflicting claims of ownership to residue gas from the operation of appellant's oil leases. Appellee as plaintiff in its bill filed in the United States District Court for the Northern District of Oklahoma against the appellant as defendant, alleging ownership of residue gas, which appellant was using for certain specified purposes, sought an injunction against such use, with an accounting for the part thereof which appellant allegedly had unlawfully used.

The parties when not referred to as appellant or appellee or by specific name will be designated in the order in which they appeared in the trial court, the appellant as "defendant" or "Carter Oil Company," and the appellee as "plaintiff" or "Utilities Production Corporation."

In the original trial the lower court found that the appellant had the right to use the residue produced from its oil leases for certain of the purposes which appellee charged to be unlawful, but not to have that right of use in respect to certain of the uses alleged by the appellee.

In the original decree the injunction sought was denied, but an accounting for that part of the residue which the appellant had wrongfully used was therein awarded, and the cause continued for the accounting, jurisdiction for such purpose being reserved. This decree establishing the right of the parties in respect to the residue gas used by appellant was affirmed by this court on April 23, 1935. Utilities Production Corporation v. Carter Oil Co., Carter Oil Co. v. Utilities Production Corporation, 10 Cir., 72 F.2d 655. The trial court appointed a special master to take the evidence on such accounting, and report same with his findings of fact, conclusions of law and recommendations, all subject to examination, consideration, approval, modification or other disposal by the court.[1] The evidence on accounting was so taken and the report of the special master filed July 8, 1936.

In advance of the hearing before the special master, appellant and appellee had

---

[1] The order recites: " * * * the court is of the opinion that a special master should be appointed in this cause to take the evidence on the accounting which has heretofore been reserved in the opinion and decree of the (original trial) court and no objection being made to the appointment of a special master, it is now here ordered that Preston C. West, of Tulsa, Oklahoma, be, and he is hereby appointed a special master, with the powers of a Master in Chancery to take the evidence on the accounting * * *, in accordance with the provision for an accounting contained in the decree of this court, entered in said cause on February 10, 1933, and in accordance with the opinion of said court, and with the opinion of the United States Circuit Court of Appeals affirming the same. * * *

" * * * after taking the said evidence, shall report the same to the court, with his findings of fact, conclusions of law and recommendations for a decree, all subject to examination, consideration, approval, modification or other disposal by the court. * * *

" * * * when the special master's, report of his findings of fact, conclusions of law and recommendations for a decree is completed, * * * the same shall be filed with the clerk * * *, and a copy of such report shall be delivered by him to respective counsel for the parties, who shall file and present their exceptions thereto, if any, within the time allowed by law and the rules of this court."

agreed upon the quantity of residue gas belonging to the appellee, under the holdings of the Circuit Court of Appeals, which appellant had converted, and so advised the court. The sole issue then as submitted for determination by the special master was as to the value of the gas converted and for which appellant should account to appellee.

Specific exceptions to report, finding and conclusions of said Master were presented and a hearing thereon had by the court, after which the report of the Master was in all things confirmed and a decree entered thereon from which this appeal was prosecuted.

It is urged by the appellee that the exceptions to the Master's report after it had been confirmed by decree in every particular by the District Court presents nothing to this court for review.

The only question being one of fact, it is contended that same may not be disturbed, citing Kimberly v. Arms, 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764; Davis v. Schwartz, 155 U.S. 631, 15 S.Ct. 237, 39 L.Ed. 289; Fidelity & Casualty Co. v. St. Matthews Savings Bank, 4 Cir., 104 F. 858; and Last Chance Mining Co. v. Bunker Hill, etc. Co., 9 Cir., 131 F. 579, 587, and further that the findings of fact and conclusions of law of the Master, and the decree entered thereon are correct.

The Utilities Production Corporation, plaintiff in the original action in the trial court, is the gas lessee of 166,400 acres in the Osage Reservation, and the Carter Oil Company, defendant, the oil lessee of 640 acres covered by said gas lease.

Casinghead gas produced in the drilling of oil wells is saturated with gasoline, it being recovered from the gas through casinghead gas plants, the residuum of dry gas being called "residue gas."

The Utilities Corporation brought this suit against the Carter Oil Company to determine the relative rights of the parties to certain residue gas produced at the Carter Oil Company casinghead gas plant, and for an accounting by said company for certain residue gas alleged to have been wrongfully withheld by it for use, and wrongfully appropriated by it.

Certain of the residue gas appropriated by the Carter Company, used by it for operating purposes, and certain of it disposed of by said company to other persons and used by them for operating purposes, is chargeable against it in this accounting.

At the beginning of the hearing before the Special Master the Carter Oil Company admitted that the measure of its liability for the gas used by it for drilling and operating its own leases should also be the measure of the liability for the gas disposed of by it to others and used by them for drilling and operating purposes.

The parties stipulated that the amount of gas for which the Carter Company should account was 84,611,000 cubic feet.

The Special Master found that there was a limited retail market throughout the entire Osage Reservation for gas to be used for operating and drilling purposes at 25 cents per thousand cubic feet for the years 1928, 1929 and 1930, and 18 cents per thousand cubic feet for the year 1934. On that basis, he recommended a decree in favor of the Utilities Corporation for $20,836.77.

There was evidence that the Utilities Production Corporation, under a ten year contract, was selling gas at 9 cents per thousand cubic feet for current gas, and 10 cents per thousand cubic feet for storage gas, the contract providing for a minimum per day of 500,000 cubic feet, and a maximum per day of 25,000,000 cubic feet. The contention on its part was that that was no fair measure of the value of small amounts of gas.

The evidence proved not merely isolated sales but a general market price of 25 cents per thousand cubic feet for the years 1928, 1929, and 1930, and 18 cents per thousand cubic feet for the year 1934 for gas to be used for drilling and operating purposes in the Osage field, the purchaser paying the transportation charges. The residue gas, the value of which was for determination, was used for drilling and operating purposes. Had the Carter Oil Company purchased the gas in the open market, it would have had to pay that price for same, which was the value for residue gas found by the Master.

The finding of the Special Master as to the fair value of the gas appropriated at the time and place of appropriation appears to be sustained by the evidence. In addition, same should be treated as presumptively correct unless the court is fully satisfied that error has been committed. Equity Rule 61½, 28 U.S.C.A. following section 723, Atherton v. Anderson, 6 Cir., 86 F.2d 518.

The decree of the lower court is affirmed.