LOUP COUNTY, NEBRASKA, APPELLEE, v. CHARLES A. RUMBAUGH ET AL., APPELLANTS.

38 N. W. 2d 745

Filed July 7, 1949. No. 32525.

564

*Davis & Vogeltanz*, for appellants.

*A. F. Alder*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a tax foreclosure action brought by Loup County, Nebraska, as plaintiff, against Charles A. Rumbaugh and Rosale Rumbaugh, his wife, to foreclose irrigation taxes levied and assessed upon the school land

leasehold interest held by defendants upon land owned by the state.

The plaintiff's amended petition alleges in substance that the school land leasehold interest in that part of Section 36, Township 24 North, Range 19 West of the 6th P. M., in Loup County, Nebraska, contained within the boundaries of the Calamus Irrigation District, was duly, legally, and regularly assessed and taxes levied thereon by the county board of Loup County, the board of directors of said irrigation district having neglected and refused to make such a levy for and as an irrigation tax the most of the years from 1928 to 1942, said irrigation tax being for the payment of judgments rendered and in force against said irrigation district for expenses growing out of, connected with, and incident to the organization of said district, and for the payment of principal and interest of outstanding bonds, otherwise designated as warrants, of said irrigation district; that said taxes were not paid when due and became delinquent; that on July 2, 1945, after said property was duly advertised and offered for sale at public auction by the county treasurer of Loup County, as provided by law, for the taxes levied for each of said years, and said property remaining unsold for each of said years for want of bidders, the property was, pursuant to proper resolution of the county board in the manner and form provided by law, for the use and benefit of plaintiff, and on said date sold to plaintiff for the sum of $1,251.40, for the amount of taxes, interest, penalty, and expenses thereon; and that the county treasurer did issue to plaintiff county treasurer's tax-sale certificate No. L 100, and the plaintiff is now the owner and holder of said tax-sale certificate which remained in the custody of the county treasurer, subject to assignment of any person wishing to buy for the sum expressed on the face thereof, and interest thereon as provided by law. The plaintiff then set up its lien and the authorization of the county attorney to proceed to foreclose the tax-sale certificate in

the name of the plaintiff as trustee for itself and for the municipal subdivisions for which said taxes were assessed and levied. The plaintiff further alleged that the defendant Charles A. Rumbaugh was at all times mentioned the record title owner of said leasehold by virtue of school land lease as indicated by the records in the office of the county treasurer of Loup County; and that the right and title of each of said defendants in the property above described, are subject, junior, and inferior to the lien of the plaintiff, and the plaintiff was entitled to a foreclosure. The prayer of the amended petition is in the usual form for an accounting, foreclosure, and declaration of liens.

The defendants' answer, for the purposes here to be considered, denied generally the allegations of the amended petition not admitted; specifically denied that the county board of Loup County, Nebraska had any power to levy the taxes for the payment of a judgment, or judgments, against the Calamus Irrigation District as alleged; alleged that the levying of said taxes was null and void, and the same could not become a lien against any of the real estate in suit and upon which the defendant Charles A. Rumbaugh had a school land lease; that no proper and sufficient proceedings were had for the levying of any of said taxes; and prayed dismissal of the plaintiff's case.

On October 22, 1947, the district court entered a decree and judgment of tax foreclosure in favor of the plaintiff and against the defendants, upon the school land leasehold of Charles A. Rumbaugh, as set out in the amended petition. Upon the overruling of the motion for new trial, the defendant Charles A. Rumbaugh appeals.

For convenience the parties will be referred to as originally designated in the district court.

It appears from the record that on September 29, 1927, an action was brought in the United States District Court for the district of Nebraska, Grand Island division,

by Greenshields & Everest Company, a corporation, Trustee, organized and existing under the laws of the State of Iowa and a resident and citizen of that state, against the Calamus Irrigation District, a corporation, which, by stipulation of the parties, was transferred to the Omaha division of said court.

The petition alleged, among other matters, that on December 16, 1925, the defendant, for a valuable consideration, duly and legally executed, sold, and delivered nine certain warrants of the Calamus Irrigation District of the denomination of $500 each, payable to bearer, and which were presented for payment on December 23, 1925. The payment was refused. The plaintiff prayed judgment for the amount of $4,500, with interest and costs. The defendant, by one Roy M. Harrop its attorney, filed an answer alleging the defendant to be a corporation de jure or de facto, with full power to exist and operate as such, subject to be questioned by quo warranto, or otherwise, as to its corporate capacity only by the State of Nebraska; admitted the diversity of citizenship of the plaintiff and defendant and the value of the subject matter in suit; admitted that in the year 1925 it executed, sold, and delivered its nine warrants, payable to bearer, as described in the plaintiff's petition and which were registered December 23, 1925; alleged that it was advised by competent legal authority of this state and an adjoining state of its liability on said warrants, and would confess judgment thereon but for the matter thereinafter pleaded, which constituted a proper subject of adjudication. This matter was with reference to an action pending in the district court for Loup County having to do with obtaining authority to issue bonds in the amount of $163,000 for the purpose of providing a construction fund for the district. The proceedings with reference to this matter are alleged, and are not necessary to be set out. The defendant prayed the judgment of the court that it is and at all times has been, a public corporation and acted

as such, and in the exercise of its powers it duly and legally executed, sold, and delivered its nine warrants as set forth in the plaintiff's petition, payable to bearer, and duly registered the same December 23, 1925, and that the plaintiff be required to make strict proof of the amount, if any, due and owing it and have nothing further by its suit.

On October 24, 1927, the court found that the defendant is and was on July 20, 1925, and at all dates mentioned in plaintiff's petition, a duly and legally created, organized, and existing irrigation district under the laws of the State of Nebraska; that it was a public corporation duly and legally organized, and set forth the names of the officers of the defendant and the real estate embraced within the irrigation district. The court rendered judgment in favor of the plaintiff and against the defendant, in the amount of $4,762.50, with interest and costs, and made the judgment a lien on the real estate described in the order and judgment.

The landowners and leasehold owners within the Calamus Irrigation District sought to intervene in the afore-cited case after the judgment therein was rendered, and the case was appealed to the Circuit Court of Appeals, Eighth Circuit. The case appears in 29 F. 2d 552, entitled Draver v. Greenshields & Everest Co., decided November 9, 1928. The court said: "This is an appeal from an order denying a motion to vacate a judgment in an action at law against an irrigation district, made for the purpose of enabling appellants, landowners in said district, to obtain leave to intervene in that action and make defense. The judgment was entered on October 24, 1927, after the district had filed its answer admitting liability for the amount recovered. One week later appellants appeared and moved that the judgment be set aside and tendered their proposed petition in intervention." The tendered petition in intervention and affidavits sought to avoid the organization of the district. The court did not pass upon the suffi-

ciency of the petition in intervention in such respect, or intimate that the facts as contained therein, if established, would avoid the organization of the district, or that the district was not a corporation de jure, but considered the case on the assumption that the facts relied on were sufficient for appellants' purpose, and held the trial court did not err in denying intervention; that the legality of the organization of public corporations, which are acting under color of law, cannot be raised collaterally, and where proposed interveners failed to file application to intervene before trial of action in which intervention was sought, commenced as required by section 8552, Comp. St. 1922, they could not thereafter insist on being permitted to intervene as a matter of right; and held that the Calamus Irrigation District, under the circumstances was a corporation de facto. This judgment was transcripted and filed in the office of the county clerk of Loup County on December 11, 1928. In a case entitled Greenshields and Everest Company, a corporation, Trustee, relator, v. Everett Satterfield, respondent, the latter at that time being the county clerk of Loup County, peremptory writ of mandamus was served on the respondent. It recited in substance that judgment was rendered in the United States District Court for the District of Nebraska, Omaha division, December 7, 1928, for the issuance of the writ commanding the respondent to enter the levy heretofore made on the real estate in the Calamus Irrigation District on the tax list of Loup County, Nebraska for the year 1928, and to determine, extend, and carry out the sum, or sums, of money levied against every tract in said irrigation district, and prescribed the method by which the respondent should handle the matter and certify obedience and due execution of the writ to said court pursuant to such action.

The record shows the following proceedings of the county board of equalization of Loup County in substance as follows: "Coming now to the request of

Greenshields and Everest Co., a corporation, trustee for a levy to meet the indebtedness of the Calamus Irrigation District which request is as follows: You are hereby notified that on the 24th day of October 1927 the undersigned, Greenshields and Everest Company, a corporation, Trustee, recovered a judgment in the United States District Court at Omaha against Calamus Irrigation District for the sum of $4762.50, with interest at 7% per annum from the date of entry of judgment and costs fixed at $51.74. That a transcript of said judgment has been filed with the County Clerk of Loup County, Nebraska. That on or about the 21st day of February, 1928 Greenshields & Everest Company, a corporation, Trustee, made a demand on the Calamus Irrigation District and its officers to provide funds for the payment of said judgment and to make a levy of taxes on the property within said district to satisfy said judgment, interest and costs. That said Calamus Irrigation District, and its Board of Directors, have refused and failed to make a levy to satisfy said judgment. That under the provisions of Sec. 2875 of the Comp. Stat. of Nebraska, 1922, it is the duty of you, as members of the County Board, to cause an assessment roll of said district to be prepared and to make a levy on the property included in said district to provide funds for the payment of the judgment, interest and costs."

It was moved and seconded that, as requested, a levy of five mills for the year 1928, be made and carried on all real estate included in the Calamus Irrigation District as shown by the plats on file in the office of the county clerk, and described in the judgment, and that the amounts so levied and collected be applied on the payment of said judgment. This motion was carried.

The minutes of the county board of equalization of Loup County included in the record show levies made in different amounts of mills in subsequent years to be used for the payment of the judgment as aforesaid, which we deem unnecessary to set forth.

The foregoing is self-explanatory, and constitutes the history of one of the judgments upon which taxes were levied and assessed upon the land within the Calamus Irrigation District to pay the same, such taxes being a part of the taxes in controversy in the instant case.

The other judgment which constitutes a basis for the balance of the taxes levied and assessed in the instant case was rendered on the 31st day of May, 1934. It was on a report of trustees of the Calamus Irrigation District and was with reference to winding up the affairs of the district and for attorney fees and expenses in such behalf, in the total sum of $3,040.80. Minutes of the county board of equalization of Loup County show a levy of a certain number of mills as taxes to be collected in the payment of such judgment for a period of years.

The aforesaid judgment resulted from an action filed in the district court for Loup County on November 4, 1927, brought on the relation of a special county attorney of Loup County, plaintiff, v. John Harrop, Dan Haskin, Merle Dow, and Roy Harrop, the first three being alleged directors of the Calamus Irrigation District and Roy Harrop being secretary of said board. The information in said action alleged in part: "That on or about March 19, 1925 the said Roy Harrop caused to be filed in the office of the County Clerk of Loup County, Nebraska a petition to organize an irrigation district * * * to be known as the Calamus Irrigation District, * * * under sections 2857, 2858 and 2859 of the Compiled Statutes of Nebraska for 1922, as amended and in force upon said date, * * *" and set forth certain allegations to disclose that said irrigation district was not properly and legally organized. The defendants' answer was to the effect that the irrigation district was properly and legally organized as required, and prayed dismissal of the action. Due to the resignation of the specially appointed county attorney, another specially appointed county attorney was appointed to continue the prosecution of the case. The Calamus Irrigation District filed a petition in inter-

vention, asserting the district was properly and legally organized, and prayed dismissal of the action. The judgment obtained by Greenshields and Everest Company, a corporation, as heretofore set out, was attached to and made a part of the answer of the alleged directors and secretary of the Calamus Irrigation District, and was also attached to and made a part of the petition in intervention. The replies were general denials.

On March 6, 1928, the district court for Loup County entered judgment, finding and adjudging that the Calamus Irrigation District was not legally and properly organized and had never existed as a legally organized irrigation district, and that the county board of Loup County, Nebraska was without jurisdiction to enter an order organizing said Calamus Irrigation District, and that said Calamus Irrigation District, intervener therein, had never had a legal and valid existence as such. The defendants and the Calamus Irrigation District appealed from such judgment to this court. On April 19, 1929, this court entered judgment as follows: "This cause coming on to be heard upon appeal from the district court of Loup county, was argued by counsel and submitted to the court; upon due consideration whereof, the court finds no error apparent in the record of the proceedings and judgment of said district court. It is therefore, ordered and adjudged that said judgment of the district court be, and hereby is, affirmed * * * mandate issue accordingly. No Opinion."

There appears in 120 Neb. 714, 235 N. W. 95, the case of Elliott v. Calamus Irrigation District, and in 120 Neb. 719, 235 N. W. 97, the cases of Cameron v. Calamus Irrigation District and Stroud v. Calamus Irrigation District. The decision is announced in Elliott v. Calamus Irrigation District, *supra,* and controls the two latter-cited cases. These actions were begun in the district court for Loup County against the Calamus Irrigation District to recover from the district, with interest, certain amounts which the plaintiffs held in warrants sold by the district. These

warrants were part of the same series of warrants held by Greenshields and Everest Company as trustees, and upon which they recovered judgment in the United States District Court, Division of Nebraska. This court held, after setting forth the judgment in the case affirmed without opinion wherein the Calamus Irrigation District was held not legally organized and its officers ousted and that the district as an entity was dissolved and citing statutes which we need not cite here, that the statutes clearly provide that before any warrants may be issued by the board, that is the irrigation district board, a levy must have been made therefor, but in the present case warrants in the sum of $10,000 were issued before any levy was made, and, in the absence of a levy therefor, the directors of an irrigation district board were without statutory authority to issue warrants in any amount. This case held: "The statutes governing the organization and the management of irrigation districts are mandatory and are to be strictly construed. An irrigation district is a public corporation and the powers of its officers and directors are limited by the terms of the statute under which the district was created. When the officers of an irrigation district issue warrants prior to a levy therefor at a time when no fund exists against which a levy may be made, such warrants are void. In the absence of a levy by the officers of an irrigation district, such officers are without statutory authority to issue warrants for any amount." The court further held that the officers of an irrigation district are "charged with notice of the statutory powers and limitations of such officers by the provisions of the statutes relating thereto."

We have heretofore set out that part of the record necessary to a determination of this appeal. In addition thereto we have set forth certain decisions of this court where the assessment and levy of taxes constituting the subject matter of this appeal were involved.

The landowners and leasehold owners were parties to

the litigation in the state courts, as above set out. They were not parties to the litigation in the United States District Court or in the case in the Circuit Court of Appeals, as hereinbefore indicated and which will be discussed later in the opinion.

"The general rule is that, while a court will take judicial notice of its own records, it will not in one case take judicial notice of the record in another case. However, where cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in former proceedings involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judgments in the former action." Witzenburg v. State, 140 Neb. 171, 299 N. W. 533.

" 'There may be cases so closely interwoven or so clearly interdependent, as to invoke a rule of judicial notice in one suit of the proceedings in another suit.' 23 C. J. 114; and a court 'will take notice of its records to the extent of knowing that the controversy involved in an appeal has already been considered by it on a previous occasion.' 20 Am. Jur. 105, sec. 87. 'In a case like this the court has the right to examine its own records and take judicial notice thereof in regard to proceedings formerly had therein by one of the parties to the proceedings now before it.' Dimmick v. Tompkins, 194 U. S. 540, 24 S. Ct. 780." Witzenburg v. State, *supra*. See, also, In re Estate of McCleneghan, 145 Neb. 707, 17 N. W. 2d 923; Johnson v. Marsh, 146 Neb. 257, 19 N. W. 2d 366.

Having the foregoing authorities in mind, we have taken judicial notice of the records of this court in accordance therewith.

The defendants contend that the county board of equalization of Loup County had no statutory authority to levy and assess taxes on the real estate or leasehold interests on school land owned by the state to pay the judgments as heretofore set out.

Section 2875, ·Comp. St. 1922, as set forth in the minutes of the county board of equalization of Loup County as the authority for the levy of taxes to pay the judgments, is now shown as sections 46-134 to 46-138, R. S. 1943. We set forth briefly a résumé of these sections for the reason that said sections contain the same subject matter as appears in section 2875, Comp. St. 1922.

Section 46-134, R. S. 1943, provides in part as follows: "The board (irrigation district board) shall then levy an assessment sufficient to raise the annual interest on the outstanding bonds, and all payments due or to become due the ensuing year to the United States * * *" then details the manner of assessment. There was no obligation on the part of the Calamus Irrigation District to the United States government at any time—no bonds were issued, warrants were issued as herein noted.

Section 46-135, R. S. 1943, provides: "If the board deems it necessary, it may at the same time levy an assessment for the care and maintenance of irrigation works already constructed and for the payment of salaries of officers and general expenses, * * *" then details the manner and form of such assessments. The record fails to disclose that an assessment was made for the purposes designated in such section of the statutes.

Section 46-136, R. S. 1943, provides for the collection by the county treasurer in the same manner as other taxes are collected, for the purpose of the general fund as mentioned in section 46-135, R. S. 1943.

Section 46-137, R. S. 1943, provides for the disposition of the taxes raised in the irrigation district.

Section 46-138, R. S. 1943, provides in part: "In case of the neglect or refusal of a board of directors of any irrigation district to cause an assessment and levy to be made as provided in sections 46-134 and 46-135, for the payment of principal and interest of outstanding bonds, * * * (which involves indebtedness to the United States government) and for expenses incurred in organizing such district, then the assessment of property made for

county purposes, after the same shall have been adjusted by the county equalization board, shall be adopted and shall be the basis and assessment for the district, * * *" and provides further the obligation of the county board of equalization with reference to the assessment and the levy to be made. Nothing in this section gives the county board of equalization authority to levy for payment of a judgment obtained against an irrigation district such as the Calamus Irrigation District, or even one that has been dissolved. There is no evidence that either of the judgments were for organization purposes unless the same could be included under general expenses, and if so, there would be no way to tell whether the warrants in question were for that purpose or some other purpose, as far as the record is concerned.

We now refer to section 77-1619, R. S. 1943, which has to do with judgments, and provides: "Whenever any judgment shall be obtained in any court of.competent jurisdiction in this state for the payment of a sum of money against any county, township, school district, road district, town or city board of education, or against any municipal corporation, or when any such judgment has been recovered and now remains unpaid, it shall be the duty of the county board, school district board of education, city council or other corporate officers, as the case may require, to make provision for the prompt payment of the same."

Section 77-1619, R. S. 1943, is analogous to section 5987, Comp. St. 1922, which was in force at the time the Calamus Irrigation District was alleged to have been legally formed and the warrants issued and judgment thereon rendered, which is one of the judgments constituting the basis for the assessment and levy of the taxes sought to be foreclosed in the instant case, and the law was the same with respect to the judgment rendered in 1934.

If any authority existed under section 5987, Comp. St. 1922, or what is now section 77-1619, R. S. 1943, for the

county board of equalization of Loup County to make provision for the prompt payment of the judgments mentioned, it must be on the theory that the Calamus Irrigation District was a municipal corporation. In this respect the record reflects the Calamus Irrigation District was a public corporation and pleaded to be such a corporation. This court has held on numerous occasions as follows: "An irrigation district, organized under the laws of Nebraska, is a public corporation, but is not a municipality * * *." Bliss v. Pathfinder Irrigation District, 122 Neb. 203, 240 N. W. 291.

"Irrigation districts organized under our laws are public, rather than municipal corporations, and their officers are public agents of the state." Board of Directors of Alfalfa Irrigation District v. Collins, 46 Neb. 411, 64 N. W. 1086; Lincoln & Dawson County Irrigation District v. McNeal, 60 Neb. 613, 83 N. W. 847; Platte Valley Public Power & Irrigation District v. County of Lincoln, 144 Neb. 584, 14 N. W. 2d 202, 155 A. L. R. 412; Draver v. Greenshields and Everest Co., *supra;* Elliott v. Calamus Irrigation District, *supra.*

It will be noted that from an analysis of the aforecited sections of the statute, there was no legislative authority vested in the county board of equalization of Loup County to make provision for the prompt payment of the judgments obtained against the Calamus Irrigation District. It was declared to be a public corporation, and not a municipal corporation.

The power to levy a tax must be clearly and distinctly given by law. It is a familiar rule that in the execution of the power to tax, the taxing officers must be able to show legislative authority for every levy of taxes. See Burlington & Missouri River R. R. Co. v. York County, 7 Neb. 487.

The county board of equalization of Loup County, under the authorities heretofore cited, had no power to levy the taxes in suit, and the levy thereof was made

without statutory authority. Therefore, the defendants' contention is well taken, and is sustained.

The judgment in Greenshields and Everest Co., a corporation v. Calamus Irrigation District, as heretofore mentioned, was tantamount to a judgment entered by consent by the attorney and secretary of the defendant district. The landowners and school land leasehold owners upon land owned by the state were not made parties to such action, but sought to intervene therein and were denied the right of intervention and appealed to the Circuit Court of Appeals in the action entitled Draver v. Greenshields and Everest Co., a corporation, wherein the appellants were denied the right of intervention and the judgment of the United States District Court was affirmed.

The plaintiff relies upon the case of Draver v. Greenshields and Everest Co., *supra*. This case has no binding effect in this appeal for the reason that the landowners and school land leasehold owners within the Calamus Irrigation District were not parties to such litigation. In this connection we deem the following authorities pertinent.

In the case of Warren v. County of Stanton, 145 Neb. 220, 15 N. W. 2d 757, this court said: "It is a general rule with respect to domestic judgments that they cannot be collaterally impeached by the parties for collusion or fraud not going to the jurisdiction and that consent judgments are as conclusive on collateral attack as judgments rendered after a trial. There is a recognized exception to the general rule in cases involving public interests where the public was a party by representation only. In such cases the persons represented may show fraud or collusion in obtaining the judgment. If the judgment was collusive or by the consent of an officer as to a matter with respect to which he had no authority to bind the public, and it was not a decision by the court after a hearing on the merits, it does not afford a basis for a plea of res adjudicata as against the public interest involved."

The attorney and secretary of the Calamus Irrigation District, a defendant in the case of Greenshields and Everest Co., a corporation v. Calamus Irrigation District, was in no proper sense a representative of the leasehold owners or property owners within the Calamus Irrigation District. Their rights were not derived through him nor dependent upon his acts. This was not the case of a submission to the court of a question for decision on the merits, but it was a consent in advance to a particular decision by a person who had no right to bind the property owners, but in reality was a consent to give life to the warrants involved in such action.

A judgment entered by agreement or consent should not be given a conclusive effect where to do so would violate an important public policy. If a suit is devised for the purpose of having a certain judgment entered, it will not be binding upon the public or those who are not parties to the scheme adopted for that purpose. A taxpayer is not estopped by a consent judgment upon an unlawful contract, (People v. Illinois Central R. R. Co., 298 Ill. 516, 131 N. E. 624), neither can a legal liability be established by such a judgment. See, Warren v. County of Stanton, *supra;* Lawrence Mfg. Co. v. Janesville Cotton Mills, 138 U. S. 552, 11 S. Ct. 402, 34 L. Ed. 1005; Wadhams v. Gay, 73 Ill. 415; Kane & Co. v. Independent School District of Rock Rapids, 82 Iowa 5, 47 N. W. 1076; Annotation in 2 A. L. R. 2d, pp. 514 through 520.

The case of Boynton v. Moffat Tunnel Improvement District, 57 F. 2d 772, was an action involving bonds issued by the Moffat Tunnel Improvement District wherein the Circuit Court of Appeals of the United States, Tenth Circuit, held that the bonds were valid and the plaintiffs suing thereon were entitled to relief. Proceedings were then pending before the Colorado Supreme Court seeking to have the bonds declared to be invalid. The following language is appropriate. After reviewing several decisions, the court said: "It should not be

understood, from what has been said, that there is any difference in the power possessed by the state and national courts. Each has power to render binding judgments on parties properly before it; neither has power to bind parties who are not before it, as the Colorado Supreme Court has ruled in this particular case. A final decree in the state court suit would be persuasive authority in this court, but it would not be res judicata as to the parties in this case who are not parties in that; neither would a decree of this court be res judicata as to parties in the state court who are not parties here; and different issues are, to a considerable extent, presented in the two courts. The rules to which we have adverted are alike applicable to the courts of the two sovereignties." See, also, Hollingsworth v. Barbour, 29 U. S. 466, 4 Pet. 466, 7 L. Ed. 922; Utilities Production Corporation v. Carter Oil Co., 72 F. 2d 655, 2 F. Supp. 81, 100 F. 2d 1006; Botz v. Helvering, 134 F. 2d 538; Stubbs v. United States, 21 F. Supp. 1007; Baltimore Transit Co. v. Flynn, 50 F. Supp. 382; Strong v. Aetna Casualty & Surety Co., 52 F. Supp. 787.

We deem other assignments of error unnecessary to determine.

For the reasons herein given, the judgment is reversed and the cause dismissed.

REVERSED AND DISMISSED.

YEAGER, J., participating on briefs.